IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TONG HO ZHANG, A-70-577-572 : | |
| : | |
| Petitioner, : | |
| : | |
| v. : | CIVIL ACTION |
| : | |
| JOHN ASHCROFT AND : | |
| IMMIGRATION AND : | NO. 02-4377 |
| NATURALIZATION SERVICE : | |
| : | |
| Respondents. : | |

## **ORDER**

AND NOW, this        day of                    , 2002, upon consideration of the Government's response to Petitioner's Writ of Habeas Corpus, and any response thereto, it is hereby ORDERED that the petition is DENIED.

BY THE COURT:

_____
JAN E. DuBOIS
*Judge, United States District Court*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TONG HO ZHANG, A-70-577-572 | : | |
| | : | |
| Petitioner, | : | |
| | : | |
| v. | : | CIVIL ACTION |
| | : | |
| JOHN ASHCROFT AND | : | |
| IMMIGRATION AND | : | NO. 02-4377 |
| NATURALIZATION SERVICE | : | |
| | : | |
| Respondents. | : | |

**GOVERNMENT'S RESPONSE TO
PETITION FOR WRIT OF HABEAS CORPUS AND
REPORT ON PETITIONER'S CUSTODY STATUS**

The United States of America, by its attorneys, Patrick L. Meehan, United States Attorney for the Eastern District of Pennsylvania, and Susan R. Becker, Assistant United States Attorney for the District, on behalf of respondents, the Attorney General of the United States and the Immigration and Naturalization Service, hereby files this response to Tong Ho Zhang's Petition for Writ of Habeas Corpus and moves the Court to dismiss the Petition with prejudice.

**I.     Introduction**

This is a habeas petition brought under 28 U.S.C. § 2241 by Tong Ho Zhang, a native and citizen of China.[1]  He entered the United States illegally at Douglas, Arizona on or about July 29, 1992.  (See Exhibit 1).  On July 30, 1992, the Immigration

---

[1] Tong Ho Zhang also has used an alias, Chin Sun Lin, which is the name reflected in the Order to Show Cause and the Immigration Judge's Order, Exhibits 1 and 2; See Exhibit 3 for information relating to the alias).

and Naturalization Service ("the Service") issued an Order to Show Cause and Notice of Hearing, advising Zhang that he was subject to deportation under Section 241(a)(1)(B) of the Immigration and Nationality Act ("the Act") as an alien who entered the United States without inspection. (See Exhibit 1). On October 14, 1992, an Immigration Judge held a hearing on the charges set forth in the Order to Show Cause. Zhang breached his bond and did not appear for the hearing. The Immigration Judge ordered Zhang removed, in absentia, to China. (See Exhibit 2).

At some point during 2001, the Service caught up with Zhang when he was detained for an arrest at a local prison. On or about December 12, 2001, upon his release from the custody of the local authorities, the Service arrested Zhang and took him into custody in order to carry out his final order of removal. On June 27, 2002, Zhang filed this habeas petition. He claims that his detention during these removal proceedings violates the Supreme Court's decision in Zadvydas v. Davis, 121 S.Ct. 2492 (2001), and that the Service will not be able to remove him to China in the reasonably foreseeable future.

Zhang's argument is without merit. Under the Immigration and Nationality Act ("the Act"), the Service is given a 90 day "removal period" in order to carry out an order of removal. 8 U.S.C. § 1231(a)(1)(A).[2] In Zadvydas, the Supreme Court held that the statutory removal period for an alien in deportation proceedings may be extended by

---

[2] In Zhang's case, the removal period began on December 12, 2001, the date the Service took Zhang into custody. See 8 U.S.C. § 1231(a)(1)(B)(iii).

the Attorney General up to six months. 121 S.Ct. at 2505. However, the Court did not limit the removal period to a maximum of six months. Rather, as the Court stated: "[t]his 6-month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." Id.

The Service has made diligent efforts to obtain travel documents for Zhang from the consulate in China and believes it will be able to carry out his removal in the reasonably foreseeable future. The Service has consistently been able to repatriate Chinese nationals over the past several years, and Zhang has not presented any evidence that he cannot be returned to his native country. It is lawful under Zadvydas for the Service to continue to detain Zhang as it completes the process for carrying out his removal to China. Zhang's petition for writ of habeas corpus should therefore be dismissed. The Court has jurisdiction under 28 U.S.C. § 2241(c)(3); there is no exhaustion requirement.

**II.    Factual Background**

1. Tong Ho Zhang, a.k.a. Chin Sun Lin, is a native and citizen of China. (See Exhibit 1, Order to Show Cause; Exhibit 3, Information for Travel Document or Passport, reflecting Zhang's alias).

2. Zhang entered the United States illegally at Douglas, Arizona, on or about

July 29, 1992.  (See Exhibit 1).

3. On July 30, 1992, the Service issued an Order to Show Cause and Notice or Hearing, advising Zhang that he was excludable from the United States because he had entered without inspection.  (See Exhibit 1).

4. On October 14, 1992, an Immigration Judge held a hearing on the charges set forth in the Order to Show Cause.  Zhang breached his bond and did not appear for the hearing.  The Immigration Judge ordered Zhang removed, in absentia, to China.  (See Exhibit 2).  Zhang never appealed the decision or moved to reopen his proceedings before the Board of Immigration Appeals.

5. In 2001, the Service encountered Zhang when he was detained by local authorities for an arrest, and became aware of the outstanding order of deportation.

6. On August 27, 2001, the Service presented Zhang to the Chinese consulate in New York as part of the process for obtaining travel documents to repatriate him to China.  (See Exhibit 3 and Exhibit 5, Custody Review Worksheet, p.1).  The Service made subsequent requests for travel documents from the Chinese consulate on December 10, 2001 and February 12, 2002.  (See Exhibit 4 and Exhibit 5, Custody Review Worksheet, p.1).

7. On December 12, 2001, upon his release by local authorities, the Service took Zhang into custody in order to carry out his removal order.  (See Exhibit 5, Custody Review Worksheet, p.1).

8.  On March 14, 2002, because the Service had not yet carried out the order removing Zhang to China, Service deportation officers performed a review of his custody status. (See Exhibit 5).

9.  March 19, 2002, the District Director issued a decision that Zhang should remain in custody based on the risk of flight were he to be released. The District Director transferred control of Zhang's custody case to the Service's Headquarters Post Order Detention Unit ("HQPDU"). (See Exhibit 6).

10. On May 16, 2002, the HQPDU issued a Decision to Continue Detention. The decision stated that it was likely that a Chinese national such as Zhang can be removed to China, and noted the numbers of Chinese nationals removed to China in Fiscal Years 2000, 2001 and 2002. The decision further stated that Zhang could bring forth evidence at anytime in the future to demonstrate reason to believe that his removal to China was unlikely. (See Exhibit 7).

11. On June 27, 2002, Zhang filed this habeas petition challenging his detention during these removal proceedings.

**III.**   <u>**Legal Argument**</u>

    A.   <u>Zhang's Detention is Lawful Under Both The Act and the Supreme Court's Decision in Zadvydas v. Davis.</u>

Under the Immigration and Nationality Act, 8 U.S.C. § 1101, et seq. ("the Act"), the Service has a 90 day statutory "removal period" in order to effect Zhang's removal from the United States. 8 U.S.C. § 1231(a)(1)(A). The removal period starts at the latest of three points: the date the order becomes administratively final; the date of any reviewing court's final order; or the date the alien is released from criminal confinement. See 8 U.S.C. § 1231(a)(1)(B)(i)-(iii). In Zhang's case, the removal period began December 12, 2001, the date the Service took him into custody in order to carry out his removal. See 8 U.S.C. § 1231(a)(1)(B)(iii). Detention is mandatory during the removal period. 8 U.S.C. § 1227(a)(2). If the Service is unable to remove the alien during those 90 days, however, the government "may" continue to detain the alien if the Attorney General has determined the alien to be a "risk to the community or unlikely to comply with the order of removal . . . ." 8 U.S.C. § 1231(a)(6); see also 8 C.F.R. § 241.4(a).

Zhang relies on the Supreme Court's decision in <u>Zadvydas v. Davis</u> to support his claim that he is being illegally detained. In <u>Zadvydas,</u> the Supreme Court addressed the issue of the temporal limits of detention of an alien under a final order of removal. The <u>Zadvydas</u> petitioner had been admitted to the United States for permanent residence, but had been ordered deported following criminal convictions. Because Zadvydas was actually "stateless" (he had been born in a displaced persons' camp in

Europe just after the Second World War), no country would agree to take him. The Court held that Zadvydas' continued detention was not permissible absent some showing that he could be removed.

In this case, however, Zhang's reliance on Zadvydas is misplaced. The Supreme Court has interpreted § 1231(a)(6) to limit an alien's post-removal-period detention "to a period reasonably necessary to bring about that alien's removal from the United States." Zadvydas, 121 S.Ct. at 2498. The Court further stated that extending the detention period for an alien in deportation proceedings up to six months is "presumptively reasonable." Id. at 2505. Zhang's removal period began on December 12, 2001, the date the Service took him into custody in order to carry out his removal. See 8 U.S.C. § 1231(a)(1)(B)(iii). Thus, under Zadvydas, the Service would have until at least June 12, 2002 as a presumptively reasonable time to detain Zhang pending actual removal. The fact that this period has recently expired, however, does not mean that Zhang is entitled to be released.

Zadvydas does not limit the Service to a maximum of six months for carrying out a deportation. Rather, the Court in Zadvydas noted:

> After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior post-removal confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink. This 6-month presumption, of course, does not mean

-7-

> that every alien not removed must be released after six
> months. To the contrary, an alien may be held in confinement
> until it has been determined that there is no significant
> likelihood of removal in the reasonably foreseeable future.

Zadvydas, 121 S.Ct. at 2505 (emphasis added).

Zhang has not presented sufficient evidence that "there is no significant likelihood of removal in the reasonably foreseeable future," as required by Zadvydas. The Service is making active efforts to obtain travel documents for Zhang. (See Exhibits 4 and 5). Although these requests are still pending, there is no reason to believe that the Service will be unable to carry out Zhang's removal within the reasonably foreseeable future. Petitioner's sole evidence of the Service's inability to remove him is his unsupported statement that he "has been informed that China is not issuing travel documents for any deported at this point." (Petition at p.1). However, this statement is belied by the Service's May 16, 2002 custody report, which notes that the Service removed 531 persons to China in 2000, 472 persons in 2001, and 207 persons in the first three months of this year. (See Exhibit 7). Under these circumstances, the Service is well within its rights to detain Zhang as it completes the process for carrying out his removal.

The Service has followed its procedures for reviewing Zhang's custody status since he has been detained beyond the 90 day statutory removal period. The regulations pertaining to the Act state that:

> The district director may continue in custody any alien
> . . . removable under [8 U.S.C. §] 1227(a)(2). . . or who
> presents a significant risk of noncompliance with the

> that every alien not removed must be released after six
> months. To the contrary, an alien may be held in confinement
> until it has been determined that there is no significant
> likelihood of removal in the reasonably foreseeable future.

Zadvydas, 121 S.Ct. at 2505 (emphasis added).

Zhang has not presented sufficient evidence that "there is no significant likelihood of removal in the reasonably foreseeable future," as required by Zadvydas. The Service is making active efforts to obtain travel documents for Zhang. (See Exhibits 4 and 5). Although these requests are still pending, there is no reason to believe that the Service will be unable to carry out Zhang's removal within the reasonably foreseeable future. Petitioner's sole evidence of the Service's inability to remove him is his unsupported statement that he "has been informed that China is not issuing travel documents for any deported at this point." (Petition at p.1). However, this statement is belied by the Service's May 16, 2002 custody report, which notes that the Service removed 531 persons to China in 2000, 472 persons in 2001, and 207 persons in the first three months of this year. (See Exhibit 7). Under these circumstances, the Service is well within its rights to detain Zhang as it completes the process for carrying out his removal.

The Service has followed its procedures for reviewing Zhang's custody status since he has been detained beyond the 90 day statutory removal period. The regulations pertaining to the Act state that:

> The district director may continue in custody any alien
> . . . removable under [8 U.S.C. §] 1227(a)(2). . . or who
> presents a significant risk of noncompliance with the

> order of removal, beyond the removal period, as necessary, until removal from the United States. If such an alien demonstrates by clear and convincing evidence that the release would not pose a danger to the community or a significant flight risk, the district director may, in the exercise of discretion, order the alien released from custody on such conditions as the district director may prescribe, including bond in an amount sufficient to ensure the alien's appearance for removal.

8 C.F.R. § 241.4(a).

In reviewing an alien's case for continued detention or release:

> The district director may consider, but is not limited to considering, the following factors: (1) The nature and seriousness of the alien's criminal convictions; (2) Other criminal history; (3) Sentence(s) imposed and time actually served; (4) History of failures to appear for court (defaults); (5) Probation history; (6) Disciplinary problems while incarcerated; (7) Evidence of rehabilitative effort or recidivism; (8) Equities in the United States; and (9) Prior immigration violations and history.

8 C.F.R. § 241.4(f).

On March 19, 2002, the District Director reviewed Zhang's custody status. Based on a review of Zhang's file and the Post-Order Custody Review Sheet prepared by the deportation officer (Exhibit 6), the District Director determined that Zhang would not be released from Service custody because he posed a significant risk of flight. (See Exhibit 6).

The custody review process has now been transferred to the Service's Headquarters Post-Order Detention Unit ("HQPDU"), which found that Zhang had not demonstrated any evidence that his removal is unlikely. (See Exhibit 7). Should Zhang continue to be detained for an extended period of time while awaiting removal, he is entitled to additional custody reviews by the HQPDU on a regular basis, and may present evidence of changed circumstances that would justify his supervised release, or evidence that would establish that the Service will not be able to carry out his removal in the reasonably foreseeable future. At this time, however, the Service's detention of Zhang is consistent the Act, its regulations, and with the Supreme Court's ruling in <u>Zadvydas</u>.

## IV.  Conclusion

Petitioner Zhang cannot establish any violation of the Constitution or statutes of the United States, and there is no basis for the Court to grant the relief he requests.  For the foregoing reasons, the government respectfully requests that the Court dismiss the Petition with prejudice.

Respectfully submitted,

PATRICK L. MEEHAN
United States Attorney

_____
JAMES G. SHEEHAN
Assistant United States Attorney
Chief, Civil Division

Dated:  August    , 2002          _____
SUSAN R. BECKER
Assistant United States Attorney

**CERTIFICATE OF SERVICE**

I hereby certify that on the ___ day of August, 2002, I caused a true and correct copy of the foregoing Government's Response to Petition for Habeas Corpus and Report on Petitioner's Custody Status to be served by first-class mail, postage prepaid, upon the following:

>Tong Ho Zhang
>Berks County Prison
>1287 Welfare County Road
>Leesport, PA 19533
>
>Pro se petitioner

_____
Susan R. Becker